United States Bankruptcy Court
Eastern District of Michigan
Southern Division

In re:
Gary A. Heraud,	Case No. 07-43275-R
      Debtor.	Chapter 7
_____/

General Motors Company,
      Plaintiff,

v.	Adv. No. 07-05813

Gary A. Heraud,
      Defendant.
_____/

Opinion Granting GM's Motion for Default Judgment and
Granting In Part GM's Motion for Summary Judgment

The matters before the Court are GM's motions for entry of a default judgment and for summary judgment. The Court conducted a hearing on May 18, 2009 and took the matter under advisement. For the reasons set forth below, the motion for entry of a default judgment is granted and the motion for summary judgment is granted in part and denied in part.

I. Introduction

Gary Heraud filed a voluntary Chapter 7 bankruptcy petition on February 20, 2007. GM holds an unsecured claim in the amount of $1,800,000.00.

On May 29, 2007, GM filed this adversary proceeding for denial of discharge under 11 U.S.C. §§ 727(a)(2)(A) & (B), 727(a)(3), 727(a)(4), and 727(a)(5) and for exception from the discharge under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

In August 2006, GM initiated a civil action against Heraud and his company, Communicom,

Inc. ("Communicom"), in the Oakland County Circuit Court asserting claims of conversion, unjust enrichment, constructive trust, and breach of fiduciary duty. On June 16, 2007, a state court consent judgment in the amount of $1,800,000.00 was entered in favor of GM and against Heraud and Communicom, jointly and severally.

The facts giving rise to GM's claims in the state court action and, in part, this adversary proceeding are based on Heraud's and Communicom's receipt and wrongful retention of over $1,800,000.00 in GM payments that were intended for Verizon Wireless ("Verizon"). GM, Communicom, and Verizon established a commercial relationship to facilitate and provide cellular phones and related services to GM representatives. Based on that relationship, GM would forward payments to Communicom and Communicom would then forward those payments to Verizon.

From 2002 through October 2004, GM forwarded over $10,000,000.00 to Communicom. During that period, Communicom received and properly forwarded those payments to Verizon. From November 2004 through January 2005, Communicom received and retained over $1,800,000.00 from GM. Despite Heraud's representations that those payments would be forwarded to Verizon, Heraud and Communicom failed to forward the payments. GM ended commercial relations with Heraud and Communicom in January 2005 and demanded that the payments be returned. Heraud and Communicom failed to comply with GM's demands and failed to return GM's funds.

Heraud admitted that he was the sole owner and operator of Communicom and that he had final authority over all financial decisions. Heraud also admitted that he was only person responsible for writing checks for Communicom.

Communicom's check register shows that from December 2004 to June 2006, Heraud wrote checks totaling over $583,000.00 to himself or to cash. Communicom's check register also shows

2

that from November 2004 through June 2006, Heraud transferred a total of over $1,388,000.00 to bank accounts owned by Communicom and G.A. Heraud Holdings, Inc., to purchase investment CDs for Communicom and G.A. Heraud Holdings, Inc., and directly to G.A. Heraud Holdings, Inc.

The facts giving rise to GM's motion for entry of default judgment stem from Heraud's failure to participate in discovery in this adversary proceeding.

On June 16, 2008, this Court issued an Adversary Proceeding Scheduling Order which adopted the parties' Rule 26(f) Conference Report. The Rule 26(f) Conference Report required initial disclosures under F. R. Civ. P. 26(a)(1) to be served on or before June 20, 2008. GM served its initial disclosures; however, Heraud failed to serve any initial disclosures.

On June 18, 2008, GM served its first requests for admissions, interrogatories, and requests for production of documents on Heraud. On July 21, 2008, Heraud served answers and objections to GM's discovery requests. Heraud refused to answer most of GM's requests for admissions based on an assertion of a Fifth Amendment privilege. In addition, Heraud refused to provide substantive answers to any of GM's interrogatories that inquired about, among other things, the disposition of GM's funds. Heraud also failed to produce a single document or to provide substantive responses to any of GM's requests for production of documents.

On October 3, 2008, GM served a deposition notice on Heraud. Through counsel, Heraud confirmed that he would not appear for deposition because he did not intend to provide substantive answers to any of GM's questions based on an assertion of the Fifth Amendment privilege.

II. Fifth Amendment Privilege

The Fifth Amendment to the United States Constitution provides, in pertinent part, that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself." U.S. CONST.

amend. V. However, asserting the Fifth Amendment privilege may have adverse consequences on an individual. The trier of fact in a civil case may draw adverse implications from the invocation of the privilege. *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551 (1976) ("Our conclusion is consistent with the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them[.]").

Once a civil litigant invokes the Fifth Amendment privilege on an issue, the litigant is barred thereafter from introducing other evidence on that issue. *See Traficant v. Commissioner of I.R.S.*, 884 F.2d 258, 265 (6th Cir. 1989). "Such limits are properly within the scope of cases holding that a party to civil litigation or other non-criminal proceedings may encounter costs imposed in exchange for the assertion of the Fifth Amendment privilege as long as they are not so high as to force abandonment of the privilege." *Id.* at 265 (*citing Spevack v. Klein*, 385 U.S. 511, 515, 87 S. Ct 511, 515 (1967); *Baxter v. Palmigiano*, 425 U.S. 308, 96 S. Ct. 1551 (1976)). The courts have given the following explanation as to why this evidentiary bar may be imposed:

> A defendant may not use the fifth amendment to shield herself from the opposition's inquiries during discovery only to impale her accusers with surprise testimony at trial.
> . . .
> Because claimant has asserted a fifth amendment claim in discovery, this court holds that he may not now waive the privilege and testify. Neither may he submit affidavits in opposition to the government's motion for summary judgment.

*U.S. v. Sixty Thousand Dollars in U.S. Currency*, 763 F. Supp. 909, 914 (E.D. Mich. 1991).

Heraud argues that, since the court has discretion over whether a negative inference is an appropriate response to the invocation of the Fifth Amendment privilege in a particular civil case, he should be permitted to participate in discovery and assert his defenses to GM's claims after the conclusion of any criminal proceeding against him. However, on April 18, 2008, this Court entered

4

an order denying Heraud's motion to stay or dismiss this bankruptcy proceeding based on a blanket assertion of the Fifth Amendment privilege. Nevertheless, Heraud continues to argue that he should be permitted to stay this adversary proceeding for an indefinite period of time. The Court concludes that it is appropriate to draw negative inferences from Heraud's assertion of the Fifth Amendment privilege and to strike Heraud's affidavit in his Response to GM's Motion for Summary Judgment and Motion for Entry of Default Judgment. To conclude otherwise would undermine the Court's previous order denying Heraud's request for a stay.

### III. Motion for Default Judgment

GM filed the present motion for entry of default judgment pursuant to Fed. R. Civ. P. 37(d) and 16(f), made applicable to this adversary proceeding by B. R. 7037 and 7016. GM argues that entry of default judgment is an appropriate sanction under Rule 37(d) for Heraud's failure to participate in discovery and under Rule 16(f) for Heraud's failure to provide initial disclosures in violation of the Court's pretrial order.

#### A. Rule 37(d)

Rule 37(d) provides that a court may enter a default judgment or may impose other sanctions it deems appropriate where a party fails to appear for deposition or fails to serve answers or objections to interrogatories or requests for inspection. Fed. R. Civ. P. 37(d). The court may impose sanctions if the party fails to comply with discovery even without a prior order compelling compliance. *Reese Corp. v. Rieger*, 201 B.R. 902, 907-08 (E.D. Mich. 1996).

To determine whether dismissal or default judgment is appropriate, the court must consider four factors: "(1) whether the party's failure is due to willfulness, bad faith or fault; (2) whether the adversary was prejudiced by the [offending] party's failure to cooperate in discovery; (3) whether

5

the [offending] party was warned that failure to cooperate could lead to dismissal [or default judgment]; and (4) whether less dramatic sanctions were imposed or considered . . . ." *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366-67 (6th Cir. 1997).

First, the Court must determine whether the party's failure to participate in discovery was due to willfulness, bad faith, or fault. A failure to provide discovery is willful where there is a "conscious and intentional failure to comply." *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995). The party seeking to avoid sanctions bears the burden of showing that the failure to comply was due to inability, not willfulness or bad faith. *U.S. v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002), *citing Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir. 1988).

In this case, Heraud's failure to participate in discovery was clearly conscious and intentional. Heraud failed to file initial disclosures, refused to answer the vast majority of GM's requests for admissions, refused to provide substantive answers to any interrogatories that inquired about the disposition of GM's funds, and failed to produce a single document in response to GM's production requests. Additionally, Heraud confirmed that he would not appear at a deposition because he did not intend to provide substantive answers to GM's questions based on an assertion of the Fifth Amendment Privilege. Heraud has not met his burden of showing that his failure to comply was due to his inability to do so. Although he is clearly able to provide substantive answers and produce the necessary documents, Heraud has intentionally chosen not to.

Second, the Court must determine whether the GM was prejudiced by Heraud's failure to cooperate in discovery. GM has been unable to obtain any information regarding the central issues in this adversary proceeding - Heraud's business transactions and the disposition of its funds. GM has clearly been prejudiced by Heraud's failure to provide substantive answers to discovery requests or provide a single document in response to GM's requests for production.

6

Third, the Court must determine whether Heraud was warned that failure to cooperate could lead to dismissal or entry of a default judgment. In April 16, 2007, Heraud filed a motion to stay or dismiss the underlying bankruptcy proceedings and this adversary proceeding pending disposition of criminal proceedings against him. The consequences of Heraud's decision to assert the Fifth Amendment privilege were thoroughly briefed and argued at the hearing with Heraud present. The Court entered an order denying Heraud's motion to stay or dismiss on April 18, 2008. Heraud was fully aware of the ramifications of his blanket assertion of the Fifth Amendment privilege and his refusal to provide discovery in this adversary proceeding.

Fourth, the Court must determine whether less drastic sanctions were imposed or considered. The Court has found that Heraud intentionally refused to provide any substantive discovery in an effort to delay the case indefinitely. The Court has considered less drastic sanctions, but it is clear that none will resolve Heraud's intentional refusal to cooperate in discovery. Accordingly, the Court finds that entry of a default judgment is appropriate in this case.

### B. Rule 16(f)

GM also argues that the Court should enter a default judgment because Heraud failed to provide initial disclosures as required by the applicable scheduling order. Rule 16(f) states that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1). Rule 16(f) further states that "[i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2).

7

In this case, Heraud failed to serve initial disclosures as required by the applicable scheduling order. The Court finds Heraud's failure to provide initial disclosures to be inexcusable and in deliberate disregard of the scheduling order.

Therefore, this Court grants GM's motion for entry of default judgment. In addition, as provided in Rule 37(d)(3) and Rule 16(f)(2), this Court also orders Heraud to pay the reasonable expenses, including attorneys' fees, which were incurred by GM as a result of prosecuting this motion.

## IV. Motion for Summary Judgment

GM filed the present motion for summary judgment on its adversary complaint to deny debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A) & (B), 727(a)(3), 727(a)(4), and 727(a)(5) and to except its debt from discharge under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

> Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor.

*United States v. Certain Real Prop*. 800 F. Supp. 547, 549-50 (E.D. Mich. 1992).

Fed. R. Civ. P. 56(e) provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

8

"Rule 56(e) places responsibility on the party against whom summary judgment is sought to demonstrate that summary judgment is improper, either by showing the existence of a material question of fact or that the underlying substantive law does not permit such a decision." *Jones v. Asgrow Seed Co.* 749 F. Supp. 832, 834 (N.D. Ohio 1990).

A. Sections 727(a)(2)(A) & (B)

GM argues that Heraud should be denied a discharge under § 727(a)(2)(A) & (B). Sections 727(a)(2)(A) and (B) provide:

(a) The court shall grant the debtor a discharge, unless –

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
>
> > (A) property of the debtor, within one year before the date of the filing of the petition; or
> >
> > (B) property of the estate, after the date of the filing of the petition;

11 U.S.C. § 727(a)(2)(A) & (B).

Because actual intent is difficult to prove directly, it may be established from circumstantial evidence or inferred from the debtor's conduct. *American Gen. Fin., Inc. v. Burnside (In re Burnside)*, 209 B.R. 867, 871 (Bankr. N.D. Ohio 1997). "Just one wrongful act may be sufficient to show actual intent . . . . However, a continuing pattern of wrongful behavior is a stronger indication of actual intent." *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 157 (Bankr. N.D. Ohio 1998).

Heraud's actions of transferring, disposing of, or concealing all, or some portion of, GM's $1,800,000.00 was clearly done with the intent to hinder and delay GM. The record shows that Heraud has concealed the true disposition of GM's funds both before and after filing for bankruptcy

relief. Heraud has concealed GM's funds by failing to provide an accounting of the funds, despite being ordered by the Oakland County Circuit Court to do so; by refusing under oath to disclose the disposition of GM's funds; and by refusing to provide substantive responses to written discovery in this adversary proceeding. Further, with the exception of the Communicom check register, which was ordered to be turned over by the Circuit Court, Heraud has not provided any financial documentation that would permit GM to determine the location or disposition of its funds.

Heraud claims that he has depleted the entirety of GM's fund "in the course of business." He claims that he cannot provide the details regarding the use of those funds due to the ongoing criminal proceedings against him, but that he will provide a complete accounting of the use of those funds after the conclusion of the criminal proceedings against him. As stated earlier, Heraud's affidavit has been stricken from the record. He has not provided any additional evidence; therefore, the Court finds that there are no genuine issues of fact for trial. Accordingly, summary judgment is granted on the §§ 727(a)(2)(A) & (B) counts.

B. Section 727(a)(3)

GM also argues that Heraud should be denied a discharge under § 727(a)(3). Section 727(a)(3) provides for the denial of discharge if:

> [T]he debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3).

This section requires the debtor to "provide the trustee or creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *Bay State Milling Co. v. Martin*

10

*(In re Martin)*, 141 B.R. 986, 995 (Bankr. N.D. Ill. 1992). "The party seeking denial of a discharge has the burden of proving the inadequacy of the debtor's records." *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882 (6th Cir. BAP 1999) *(citing Wazeter v. Michigan Nat'l Bank (In re Wazeter)*, 209 B.R. 222, 227 (Bankr. W.D. Mich. 1997)). However, "[o]nce a debtor's records are determined to be inadequate, the burden is on the debtor to establish any justification therefor." *Id.* at 883, (*citing United States v. Trogdon (In re Trogdon)*, 111 B.R. 655, 658 (Bankr. N.D. Ohio 1990)).

The only document provided to GM in this case was the Communicom check register, which was ordered to be turned over by the Circuit Court. It is clear that GM cannot determine debtor's financial condition and business transactions from this single document. Heraud has refused to produce any other documents from which his financial condition and business transactions can be determined. Heraud's justification for his failure to provide information regarding his financial condition and business transactions is based on his assertion of the Fifth Amendment privilege. Heraud asserts that he does have sufficient records to establish the use of GM's funds. However, he refuses to disclose those records until the conclusion of the criminal proceedings against him. The Court finds Heraud's justification to be inadequate. Although he admits having the necessary documents and is clearly able to produce them, Heraud has chosen to conceal all documents from which his financial condition and business transactions could be determined. Accordingly, summary judgment is granted on the § 727(a)(3) count.

### C. Section 727(a)(4)

GM also argues that Heraud should be denied a discharge under § 727(a)(4). Under § 727(a)(4), the discharge will be denied if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A).

11

> In order to deny a debtor discharge under this section, a plaintiff must prove by a preponderance of the evidence that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case. *See Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992). Whether a debtor has made a false oath under section 727(a)(4)(A) is a question of fact.

*Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000).

> Under this section, an omission alone from the debtor's statement of affairs or schedules is grounds for denying a discharge. If a debtor fails to fully provide information that is required, the debtor will be denied a discharge under § 727(a)(4). *See In re Sicari*, 187 B.R. at 879. Of course, a debtor may, at times, make a misstatement and prove that the misstatement caused minimal harm to the estate. However, "the determination of relevance and importance of the question is not for the debtor to make." *Nisselson v. Wolfson (In re Wolfson)*, 139 B.R. 279, 287 (Bankr. S.D.N.Y. 1992) (*quoting Guardian Indus. Prods., Inc. v. Diodati (In re Diodati)*, 9 B.R. 804, 808 (Bankr. D. Mass. 1981).

*HSBC Bank USA v. Handel (In re Handel)*, 266 B.R. 585, 590 (Bankr. S.D.N.Y. 2001).

GM has asserted numerous false statements and omissions in the petition, schedules, and statement of financial affairs. In Heraud's Amended Statement of Financial Affairs, he stated that he received $250,000.00 from Communicom in 2005. However, the Communicom check register shows that Heraud paid over $435,000.00 to himself or to cash in 2005. Additionally, GM asserts that Heraud failed to disclose a tax refund in the amount of $41,000.00 that he received post-petition. Three weeks later, at the meeting of creditors, the refund was disclosed. Heraud claimed that he spent the entire amount and had no receipts of those transactions. Heraud also testified at the meeting of creditors that GM's $1,800,000.00 was "used the in the course of business." However, the Communicom check register shows that Heraud transferred over $1,300,000.00 to accounts in the name of Heraud's businesses, Communicom and G.A. Heraud Holdings, Inc., for the purchase of investment CDs from November 2004 through October 2005. Heraud further testified that he did not transfer any of GM's funds to G.A. Heraud Holdings, Inc. However, the Communicom check

12

register shows that Heraud transferred $60,000.00 directly to G.A. Heraud Holdings, Inc. on June 16, 2005.

GM has clearly shown that Heraud knowingly made false statements under oath. It is also clear that Heraud's statements related materially to the bankruptcy case because they concerned property of the estate.

> Under this section, a fraudulent statement must be made with a knowing intent to defraud creditors. *Swicegood*, 924 F.2d at 232. Deliberate omissions from the schedules may constitute false oaths and result in the denial of a discharge. *Chalik v. Moorefield* (*In re Chalik*), 748 F.2d 616, 618 (11th Cir. 1984). The plaintiff must demonstrate actual, not constructive, fraud. *Wines v. Wines* (*In re Wines*), 997 F.2d 852, 856 (11th Cir. 1993). However, since defendants will rarely admit their fraudulent intent, actual intent may be inferred from circumstantial evidence. *Ingersoll v. Kriseman* (*In re Ingersoll*), 124 B.R. 116, 123 (M.D. Fla. 1991). A series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of intent to deceive. *Beaubouef v. Beaubouef* (*In re Beaubouef*), 966 F.2d 174, 178 (5th Cir. 1992). On the other hand, the discharge is not to be denied when the untruth was the result of a mistake or inadvertence. *Beaubouef*, 966 F.2d at 178.

*Rouse v. Stanke* (*In re Stanke*), 234 B.R. 449, 458 (Bankr. W.D. Mo. 1999).

Heraud's numerous false statements clearly establish his intent to deceive. Since Heraud's affidavit has been stricken and he has not submitted any additional evidence that would tend to suggest that he did not have the requisite intent to deceive, there are no genuine issues of material fact for trial. Accordingly, summary judgment is granted on the § 727(a)(4) count.

D. Section 727(a)(5)

GM also argues that Heraud should be denied a discharge under § 727(a)(5). Section § 727(a)(5) states:

(a) The court shall grant the debtor a discharge, unless –
  . . .
  (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

13

11 U.S.C. § 727(a)(5).

> Section 727(a)(5) is broad enough to include any unexplained disappearance or shortage of assets. The initial burden is on the objecting party to introduce some evidence of the disappearance of substantial assets or of unusual transactions. The debtor must then satisfactorily explain what happened. To be satisfactory, an explanation must convince the judge.

*Solomon v. Barman (In re Barman)*, 244 B.R. 896, 900 (Bankr. E.D. Mich. 2000) (internal quotations and citations omitted).

Heraud admitted that Communicom received approximately $1,800,000.00 from GM between November 2004 and January 2005. The record shows that Heraud's only response to any question raised regarding the disposition of GM's funds was that "they were used in the course of business." The Communicom check registry shows that, from December 1, 2004 until June 22, 2006, a total of $566,157.74 was transferred from Communicom to Heraud. The Communicom check registry also shows that Heraud transferred $60,000.00 to G.A. Heraud Holdings, Inc., on June 16, 2005. The Communicom check registry further shows that Heraud transferred a total of $1,338,418.98 to Comerica Bank between November 23, 2004 and October 24, 2005 to purchase investment CDs and make deposits into accounts owned by Communicom and G.A. Heraud Holdings, Inc.

It is clear that GM's $1,800,000.00 represented most, if not all, of the money transferred by Communicom after November 2004. Heraud has refused to explain the disposition of GM's funds, except to say that they were used in the course of business. Instead, Heraud has chosen to assert the Fifth Amendment privilege. Heraud's vague and unsubstantiated explanation does not "explain satisfactorily" the disposition of the funds or the deficiency of assets to meet his liabilities. Accordingly, summary judgment is granted on the § 727(a)(5) count.

E. Section 523(a)(2)(A)

14

GM also argues that the debt owed to it should be excepted from discharge under § 523(a)(2)(A). Section 523(a)(2)(A) provides:

> A discharge under section 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

Section 523(a)(2)(A) is phrased in the disjunctive. It describes three types of conduct engaged in by a debtor that can give rise to a nondischargeable debt: (1) false pretenses; (2) a false representation; and (3) actual fraud.

In its brief, GM argues that the debt owed to it is nondischargeable under § 523(a)(2)(A) based on false representations made by Heraud to GM concerning whether the funds would be properly remitted to Verizon.

> In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*In re Crim*, 149 Fed. Appx. 427 (6th Cir. 2005) (*citing Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-281 (6th Cir. 1998)). "In order to except a debt from discharge, a creditor must prove each of these elements by a preponderance of the evidence." *Rembert*, 141 F.3d at 281 (citing Grogan v. Garner, 498 U.S. 279, 291, 11 S. Ct. 654, 661 (1991)).

The first element the creditor must prove is that the debtor obtained money through material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth. "[A] plaintiff must establish a misrepresentation of past or existing fact, or a future promise

15

with bad faith intent not to fulfill the promise at the time it was made." *Liberty Heating & Cooling, Inc. v. Builders Square, Inc.*, 788 F. Supp. 1438, 1444 (E.D. Mich. 1992). GM asserts that Heraud represented through both affirmative representations and silence that the GM payments would be forwarded to Verizon. Christian A. Coval's affidavit states that "[i]n telephone discussions in December 2004, and January 2005, and in a face-to-face meeting with Mr. Heraud on January 5, 2005, Mr. Heraud stated, among other things, that he was intentionally withholding the payments due to a business issue with Verizon Wireless, but that he would forward the payments to Verizon Wireless." GM asserts that Heraud either knew that his representations were false at the time he made them or that he made the representations with gross recklessness as to their truth. GM further asserts that, at the time he made these representations, Heraud's true intent was to keep the payments and to convert them for his own pecuniary benefit. Heraud has not set forth specific facts that would suggest otherwise. Therefore, this element is met.

The second element the creditor must prove is that the debtor intended to deceive the creditor. GM asserts that Heraud's true intentions were to keep the payments and to create the impression that the payments would be properly remitted to Verizon. GM also asserts that Heraud made these false representations in order to illicit additional payments from it. Heraud argues that he did not intend to deceive GM. However, since his affidavit has been stricken and he has provided no additional evidence to prove that he did not have the requisite intent to deceive, this element is met.

The third element the creditor must prove is that it justifiably relied on the false representation. GM asserts that it justifiably relied on Heraud's false representations and silence based on the course of conduct between the parties. Between November 2002 and October 2004, Communicom and Heraud properly remitted over $10,000,000.00 in GM payments to Verizon. GM

16

had no reason to believe that Heraud would not continue to properly remit its payments to Verizon, especially after Heraud represented both on the telephone and in person that he would remit the payments to Verizon. Heraud does not dispute this element in his response. Therefore, this element is met.

The last element the creditor must prove is that its reliance was the proximate cause of its loss. GM's reliance was the proximate cause of its loss because, but for GM's reliance on Heraud's representations that the payments would be forwarded to Verizon, it would not have continued to remit additional payments. Heraud does not dispute this element in his response. Therefore, this element is met.

There are no genuine issues of material fact with regard to any of the elements of this count. Therefore, summary judgment is granted on the § 523(a)(2)(A) count.

### F. Section 523(a)(4)

GM also argues that the debt owed to it should be excepted from discharge under § 523(a)(4). Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." In its brief, GM contends that the debts owed to it are nondischargeable based on embezzlement. The Sixth Circuit Court of Appeals has explained the elements of embezzlement under § 523(a)(4) as follows:

> Federal law defines "embezzlement" under § 523(a)(4) as the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come. A creditor proves embezzlement by showing that he entrusted his property to the debtor; or the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud.

*Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996) (internal quotation marks and citation omitted).

17

Fundamentally, embezzlement involves the appropriation of property belonging to another person or entity. GM argues that it entrusted its $1,800,000.00 in funds to Communicom and that Heraud appropriated those funds for use other than that for which they were entrusted. Heraud argues that, after being remitted by GM to Communicom, title to any funds remitted belonged to Communicom, not GM. In this case, the relationship between GM and Communicom and Heraud was a contractual relationship. GM did not retain a property interest in the funds once they were remitted; rather, GM had only rights under the contract between the two parties. GM did not entrust its funds to Heraud and Heraud did not appropriate property belonging to another person or entity. Accordingly, summary judgment is denied on the § 523(a)(4) count.

The Court concludes that because the debtor's discharge is denied, further consideration of this claim is unnecessary and moot. Therefore it will be dismissed.

### G. Section 523(a)(6)

GM lastly asserts that the debt owed to it should be nondischargeable under § 523(a)(6). Section 523(a)(6) excepts from discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The elements of nondischargeability under §523(a)(6) are (1) desire to cause the consequences of the act or belief that the consequences are substantially certain to result; and (2) no just cause or excuse. *Kennedy v. Mustaine (In re Kennedy)*, 249 F.3d 576, 580 (6th Cir. 2001) (citations omitted).

Nondischargeability under § 523(a)(6) "takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974 (1998). "[U]nless 'the actor desires to cause the consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d

18

455, 464 (6th 1999) (*quoting* Restatement (Second) of Torts § 8A, at 15 (1964)). The second component of § 523(a)(6), that the injury be malicious, "means in conscious disregard of one's duties or without just cause or excuse." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986).

"An act of conversion may constitute willful and malicious injury depending on whether or not the debtor intended to cause the harm or was substantially certain that such harm would occur." *Sweeney v. Lombardi (In re Lombardi)*, 263 B.R. 848, 853 (Bankr. S.D. Ohio 2001).

The record in this case shows that Heraud transferred over $580,000.00 to himself from November 2004, the date Communicom received the funds, until June 2006. The record further demonstrates that Heraud transferred over $1,300,000.00 to Communicom and G.A. Heraud Holdings, Inc., or accounts owned by those companies. GM argues that Heraud knew that GM's payments were supposed to be remitted to Verizon and that he did not have authority to retain those funds or transfer those funds to any other party. Based on the contractual relationship between GM and Communicom, Heraud knew that all of GM's funds were supposed to be transferred to Verizon and that he did not have the right to retain those funds or transfer them to another person or entity. Yet, the Communicom check register shows that Heraud retained a portion of GM's funds for his own pecuniary benefit and transferred a large portion to his two companies. Heraud took these actions with conscious disregard of his contractual duties and without just cause. It is also clear that Heraud either desired to harm GM or knew with substantial certainty that his actions would cause harm to GM. Heraud has not presented any evidence which would tend to show that he had any just cause for his actions or that he did not desire to harm GM or did not know that his actions were substantially certain to harm GM. There are no genuine issues of material fact; therefore, summary judgment is granted on the § 523(a)(6) count.

19

## V. Conclusion

The plaintiff's motion for default judgment is granted. The plaintiff's motion for summary judgment is granted under 11 U.S.C. §§ 523(a)(2)(a) and (a)(6) and denied under 11 U.S.C. § 523(a)(4). The debtor's discharge is denied pursuant to 11 U.S.C. §§ 727(a)(2)(A) & (B), (a)(3), (a)(4), and (a)(5). The debt owing by the debtor to the plaintiff is held nondischargeable under 11 U.S.C. §§ 523(a)(2)(a) and (a)(6). The plaintiff's claim under 11 U.S.C. § 523(a)(4) is dismissed as moot.

For Publication.

**Signed on August 20, 2009**

                                                   **/s/ Steven Rhodes**
                                                   **Steven Rhodes**
                                                   **United States Bankruptcy Judge**